**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARIA GATLIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14 C 3808** |
| | ) | |
| **VILLAGE OF SUMMIT and** | ) | |
| **LES PETERSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Maria Gatlin has sued her former employer the Village of Summit and its chief of

police Les Peterson, alleging disability discrimination in violation of the Americans with

Disabilities Act (ADA) and the Illinois Human Rights Act (IHRA) (counts one and two),

race discrimination in violation of 42 U.S.C. § 1981 (count three), interference with her

rights under the Family and Medical Leave Act (FMLA) (count four), and deprivation of

property and liberty interests in violation of the due process clauses of the United States

and Illinois Constitutions (counts five, six, seven, and eight). Gatlin also asserts race

and disability discrimination claims under the equal protection clauses of the United

States and Illinois constitutions (counts nine, ten, eleven, and twelve).

Defendants have moved for summary judgment on all of Gatlin's claims. Gatlin

has moved for summary judgment on the disability discrimination and property-based

due process claims. The Court grants summary judgment in Gatlin's favor on her due

process claim based on deprivation of a property interest and in defendants' favor on

Gatlin's due process claim based on deprivation of a liberty interest and her claims of race-based discrimination. The Court otherwise denies both parties' motions.

**Background**

Maria Gatlin is a white non-Hispanic woman who was employed as a police officer with the Village of Summit Police Department for fifteen years. In July 2012, she began suffering from lower back pain. She began seeing Dr. Cary Templin in January 2013, and he advised her that her condition required surgery. Gatlin underwent a two-level spinal fusion surgery on April 10, 2013. On May 23, 2013, Dr. Templin faxed a light duty work release to the Village of Summit, noting that Gatlin could return to work on May 27 but that she could perform duties that were "sedentary only, no lifting greater than 20 lbs." Defs.' Ex. 8. Summit notified Gatlin that there were no light duty positions available and that she should report in her full duty uniform on June 17. Gatlin replied to Village Administrator Chet Strzelzyk that she could not perform full duty work. She also retained an attorney who sent a letter on her behalf on June 14, urging Summit to "engage in the interactive process" and "work with us to get Officer Gatlin back to work." Pl.'s Ex. 4. Summit never responded to counsel's letter. Gatlin reported for duty on June 17 in a light duty uniform. Gatlin was not able to meet with Chief Peterson, nor was she allowed to work that day. On July 2, Summit sent Gatlin a letter in which it stated that her inability to return to full duty meant that she had abandoned her position and that she would no longer be considered a police officer.

Gatlin applied for a disability pension with the Summit Police Pension Fund in April 2013. In May 2014, the board held a hearing where Gatlin testified and her attorney presented opening and closing statements. At the 2014 hearing, Gatlin

testified that she was unable to work. She was awarded a disability pension, which she continues to receive.

After her separation from Summit, Gatlin applied for a dispatcher's position with the Lincolnway Police Department. After the interview process, Lincolnway offered Gatlin a position conditionally, pending a background check. Shortly thereafter, Gatlin met with the director of Lincolnway's Public Safety Communications Center to discuss her former employment. After the meeting, Lincolnway rescinded its offer, citing Gatlin's "inconsistent statements regarding her past employment history." Defs.' Ex. 26.

## Discussion

Defendants have moved for summary judgment on all of Gatlin's claims. Gatlin has moved for summary judgment on her failure to accommodate claim and her property interest due process claims. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court reviews the record and draws all reasonable inferences from it in the light most favorable to the non-movant. *See Williamson v. Ind. Univ.*, 345 F.3d 459, 462 (7th Cir. 2003). On cross-motions for summary judgment, the Court considers each motion separately and views the evidence in the light most favorable to the party against whom each motion is under consideration. *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561 (7th Cir. 2002).

1.      **Disability claims**

Both parties have moved for summary judgment on Gatlin's ADA and IHRA claims. The ADA prohibits discrimination against a qualified individual with a disability. *See* 42 U.S.C. § 12112(a). Only a disability that substantially limits an individual's ability to engage in one or more major life activities is covered. *Id.* § 12102(1). A qualified individual is one who is able to perform the essential functions of her position with or without a reasonable accommodation. *Id.* § 12111(8). Because the ADA and the IHRA contain nearly the same requirements and prohibitions, and because the parties apply their ADA arguments to both claims, the Court considers both claims together.

The parties dispute whether Gatlin was disabled. They further dispute whether Gatlin could perform the essential functions of her position with a reasonable accommodation and whether her requested accommodation of light duty work was available when she attempted to return to work.

Gatlin argues that her post-surgery restrictions substantially interfered with her ability to engage in major life activities. But despite her alleged limitations, she argues, she could perform the essential functions of her job. Gatlin therefore argues that she is a qualified individual with a disability. She contends that Summit failed to engage in the interactive process and failed to accommodate her.

Because Summit claims that Gatlin was not disabled under the ADA or able to perform the essential functions of her job, it argues that she was not a qualified individual with a disability. As a result, Summit argues, it was not required to provide an accommodation to Gatlin. And even if it was required to accommodate her, Summit argues, there were no reasonable accommodations available.

Finally, Gatlin argues that Summit discriminated against her because of her disability by firing her. Summit counters by arguing that Gatlin was fired for a legitimate reason. The court examines each of these arguments separately.

### a. Disability

The parties dispute whether Gatlin was disabled for the purposes of her ADA claim. Under the ADA, an individual is disabled if a physical or mental impairment substantially limits her ability to complete a major life activity. "In 2008, Congress expanded the definition of 'disability' to make clear that 'physical or mental impairments that substantially limit' an individual's ability to lift, stand, or bend are ADA-covered disabilities." *Young v. United Parcel Serv., Inc.,* 135 S. Ct. 1338, 1348 (2015). *See* 42 U.S.C. § 12102(2)(a) (listing "lifting" as an example of a major life activity that, if substantially impaired, demonstrates that an individual has a disability). Gatlin's doctor placed her under restrictions after her surgery, noting that she could not lift objects weighing more than twenty pounds and could only perform work while sedentary. *See* Def.'s Ex. 8. Before the 2008 amendments to the ADA, the Seventh Circuit consistently held that lifting restrictions did not indicate that an individual was substantially limited in a major lift activity. *See, e.g.*, *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 782 (7th Cir. 2007) (inability to lift twenty-five to thirty pounds not a substantial limitation). Since the amendments, the Seventh Circuit has not issued a decision affirmatively determining the weight at which a lifting limitation should be considered substantial. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013) (noting potential effect of 2008 amendments); *Ceska v. City of Chicago*, No. 13 C 6403, 2015 WL 468767, at *3 (N.D. Ill. Feb. 3, 2015) (Kennelly, J.) (reasonable jury could find person with twenty-pound

lifting restriction to be substantially limited in major life activity of lifting).  A reasonable jury could find that Gatlin's restriction constitutes a disability under current law.  Indeed, there is regulatory guidance that supports such a finding.  *See* 29 C.F.R. pt. 1630, app. § 1630.2(j)(1)(viii) (2014) ("[S]omeone with an impairment resulting in a 20-pound lifting restriction . . . is substantially limited in the major life activity of lifting).

### b.    Essential functions

The parties dispute whether Gatlin could perform the essential functions of a Summit police officer with or without an accommodation.  A court may consider an employer's judgment in determining the essential functions of a position.  *See* 42 U.S.C. § 12111(8); *but see Basith v. Cook Cty.*, 241 F.3d 919, 927 (7th Cir. 2001) (although courts may consider employer's judgments, they are not limited by such).  An employer's written description of a position can be considered evidence of the job's essential functions.  42 U.S.C. § 12111(8).  In relation to the physical demands of the position, Summit's job description for police officers reads as follows:

```
1.    a.    Standing (30%)
            Walking (20%)
            Sitting (50%)
      b.    Lifting (0 lb.)
            Carrying ( lb.) [sic]
            Pushing (0 lb.)
            Pulling (0 lb.)
2.    Climbing
      Balancing
3.    Stooping
      Kneeling
      Crouching
      Crawling
4.    Reaching
      Handling
5.    Speaking       100% Need to relate to people
      Hearing        100% Need to hear all surrounding [sic]
6.    Seeing         100%
```

| | |
|---|---|
| Depth Perception | 100% |
| Color Vision | 100% |

Pl.'s Ex. 19. The job description also lists in narrative form a number of actions an employee must be able to perform, none of which expressly require any particular physical ability. *See id.* (Requiring employees to "submit written reports as required . . . [and] perform [their] assignments in a satisfactory manner . . ." among other duties).

Given this job description, a reasonable jury could find that Gatlin could perform the essential functions of the job. Although Gatlin had a twenty pound lifting restriction, there is no lifting requirement listed in the written job description. And although she was restricted from walking ("sedentary only"), walking only constituted twenty percent of her job according to this description, and there may have been an accommodation to alleviate this particular duty.

In addition, the deposition testimony that the parties have offered is insufficient to enable the Court to determine the point on summary judgment. Summit relies on Dr. Templin's determination that Gatlin could not perform the essential functions of her job. But Dr. Templin testified that when he considered Gatlin's ability to perform the essential functions of a police officer, he based his interpretation on his "observations of police in daily life and on television," and not on any consideration of Gatlin's actual job requirements. *See* Def.'s Ex. 9 at 13:8-12. When he was presented with the job description, Dr. Templin testified that Gatlin could perform the duties listed.

### c. Judicial estoppel

Summit argues that Gatlin should be judicially estopped from claiming that light duty work was available and that she was able to perform the essential functions of the job because she testified otherwise at her Pension Board hearing. *See DeGuiseppe v.*

*Vill. of Bellwood*, 68 F.3d 187, 191-92 (7th Cir. 1995) (position taken before police pension board may estop litigant in later lawsuit). Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). The doctrine "prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013). In order for judicial estoppel to apply, the court must determine 1) whether the party's positions in the two litigations are clearly inconsistent; 2) whether the party successfully persuaded a court to accept its earlier position; and 3) whether the party would derive an unfair advantage if not judicially estopped. *Id.* These considerations "are not rigid requirements, but general guideposts that must be considered in the context of all relevant equities in any given case." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013).

The parties agree that Gatlin prevailed in the previous proceeding; she was granted a disability pension. But the Court cannot say that her contentions in the present case are clearly inconsistent with her testimony before the Pension Board. Although Gatlin testified that she could not work, this testimony reasonably can be understood as reflecting Summit's insistence that she work full duty with no accommodations. And her testimony regarding the unavailability of light duty work reasonably can be understood as simply reporting what she had been told by Summit. The Court therefore declines to apply the doctrine of judicial estoppel.

### d. Failure to accommodate

Gatlin argues that Summit's failure to engage in the interactive process and its

failure to assign her to a light duty position or otherwise accommodate her violated the ADA. The ADA requires an employer to engage in an interactive process with a qualified individual to determine whether a reasonable accommodation will allow her to work. *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). If a reasonable accommodation is available, an employer who does not provide it to an employee with a disability violates the ADA unless it can demonstrate that the accommodation would impose an undue hardship on its business operations. *Id.* at 1134.

Gatlin requested a light duty position when she was released to work after her surgery. The light duty program at the Summit Police Department is a pool of temporary jobs designed to allow injured employees to work while they return to good health. Such positions are "exactly what the ADA encourages." *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002); *see also, e.g., Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 696 (7th Cir. 1998). Summit argues, however, that there were no light duty positions available and that Gatlin did not qualify for a light duty position because her injury was not temporary. *See Watson*, 304 F.3d at 752 (holding that employers are not required to allow employees to occupy light duty position indefinitely if such positions are meant to be rotating and temporary). The argument that Gatlin did not qualify for a light duty position does not hold up, at least not in the way required to entitle Summit to summary judgment. At the time of the adverse employment action, Summit had no way of knowing whether Gatlin's injury was temporary or not. In fact, it does not argue that it based its decision on any consideration of her future inability to work. Instead, it attempts to justify its denial by pointing to information gained through

discovery in this case.

Summit's contention that there were no light duty positions available likewise does not entitle it to summary judgment; the record reveals conflicting testimony on this point. *See* Pl.'s Ex. 11 (Otto dep.) at 34:1-24, 39:21-40:24 (testifying that he "always had something for someone to do" when asked if there was light duty available at the time Gatlin requested it); Pl.'s Ex. 15 (Weyer Dep.) at 19:3-13 (testifying that "there is always stuff to do" for light duty, "any given time, 24/7").

In Gatlin's cross motion for summary judgment, she argues that she is entitled to summary judgment on this claim because Summit failed to engage in the interactive process. She contends that Summit's failure to grant her requested accommodation and to inquire about alternatives makes it liable for a failure to accommodate. The interactive process, however, is not an end in itself; if no reasonable accommodation was available that would enable her to work, the employee cannot prevail on her ADA claim even if the employer refused to interact with her. *See, e.g., Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 292-93 (7th Cir. 2015); *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). Although Gatlin has cited testimony from which a reasonable jury could find that an accommodation was available, the evidence is not so definitive that she is entitled to summary judgment.

### e. Termination

Gatlin challenges her termination as discriminatory based on her disability. Disability discrimination can be proven using direct or indirect methods of proof. *Hooper v. Procter Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015). Under the direct method, a plaintiff must show that 1) she is disabled within the meaning of the ADA; 2) she was

qualified to perform the essential functions of the job with or without an accommodation; and 3) she was terminated because of her disability.  *Id.*  To prove step three under the direct-method test, a plaintiff must show that her disability was the "but for" cause of her termination.  *Id.*  Causation can be proved by direct evidence or by circumstantial evidence, such as evidence of suspicious timing or pretext.  *Id.*  Under the indirect method, a plaintiff must first establish a prima facie case by showing that 1) she is disabled; 2) she was meeting her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) her employer treated similarly-situated non-disabled employees more favorably.  *Id.*  If the plaintiff establishes a prima facie case through the indirect method, the employer must articulate a legitimate, non-discriminatory reason for its action.  *Id.*; *see also Lloyd v. Swifty Transp. Co.*, 552 F.3d 594, 601 (7th Cir. 2009). If the employer does so, then the plaintiff must present evidence showing that the employer's stated reason is pretextual.  *Id.*

Gatlin's claim appears to proceed through the direct method.  *See* Pl.'s Resp. to Def.'s Mot. for Sum. J. at 13.  The Court has already addressed the first two parts of the three-part direct method—a reasonable jury could find that Gatlin was disabled and that she could perform the essential functions of her position.  To prove the third element under the direct method, Gatlin points to the July 2013 letter from Chief Peterson.  In the letter, Peterson wrote:

> Based upon your inability to perform all the functions of a full time officer and based upon your inability/failure to report to work, the Department takes the position you have abandoned your position as a Summit Police Officer . . . therefore, you are no longer considered a Summit Police Officer.

Def.'s Ex. 4.  Because a reasonable jury could find that this letter shows that Summit

terminated Gatlin because of her disability, Summit is not entitled to summary judgment on Gatlin's disability discrimination claim.

### f.    Retaliation

Gatlin argues that Summit unlawfully retaliated against her in violation of the ADA by terminating her employment and by interfering with her efforts to obtain new employment at Lincolnway Public Communications Center.[1]

The ADA prohibits employers from retaliating against employees who assert their right under the Act to be free from discrimination.  *See* 42 U.S.C. § 12203(a).  A plaintiff can establish a claim of retaliation using either the direct or indirect method of proof. Here Gatlin relies on the direct method.  *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 14-15.  This requires her to show that 1) she engaged in activity protected under the ADA;  2) she suffered an adverse action; and 3) there is a causal connection between the two.  *See, e.g., Cloe v. City of Indianapolis*, 712 F.3d 1171, 1180 (7th Cir. 2013). Gatlin engaged in protected activity—she requested an accommodation for her disability—and she suffered adverse actions—her termination and her loss of the conditionally offered position with Lincolnway.  The disputed issue is whether a reasonable jury could infer a causal link between these events.

To establish causation under the direct method, Gatlin must provide evidence

---

[1] In their summary judgment motion, defendants make reference to Gatlin's allegation that Summit misrepresented the circumstances of her separation and thereby interfering with her pursuit of unemployment benefits. *See* Defs.' Mem. in Support of Mot. for Summ. J. at 11.  Gatlin indeed made such an allegation in her amended complaint, *see* Am. Compl. ¶ 46, but in responding to defendants' summary judgment motion, she did not challenge defendant's contention that she cannot sustain a retaliation claim along these lines.  Gatlin has therefore forfeited any such claim.  In any event, the evidence is undisputed that she received unemployment benefits irrespective of whatever Summit told the Illinois Department of Employment Security.

showing that her request for accommodation was a "substantial or motivating factor" in the adverse action. *Id.* The usual way to do this, absent an admission of retaliatory motive, is to present "a convincing mosaic of circumstantial evidence that would support the inference that a retaliatory animus was at work." *Id.* (internal quotation marks omitted). This sort of evidence generally consists of "suspicious timing, ambiguous statements oral or written, and other bits and pieces from which an inference of retaliatory intent might be drawn"; "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently"; or "evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* (internal quotation marks omitted).

Gatlin cannot sustain a retaliation claim in connection with the Lincolnway job. Brad Veerman, the Director of the Lincolnway Public Safety Communications Center, testified that he rescinded Gatlin's offer because of her inconsistent statements regarding her former employment. *See* Def.'s Ex. 28 at 15:12-18. He described meeting with Gatlin at her request and learning that the circumstances regarding of her separation from Summit were different from what she initially described. *Id.* Veerman testified that the meeting led him to believe that Gatlin was untrustworthy. *Id.* at 17:17-20. After the meeting, and considering the sensitive nature of the position for which Gatlin applied, Veerman says, he determined that she was not an appropriate candidate. *Id.* He testified that he "chose not to continue employment with her" based on this meeting, stating that "if I can't trust an employee to tell me the truth, I don't need them." *Id.* at 17:9-12. Veerman further testified that although he confirmed her start and end dates with a lieutenant at Summit, he did not speak about the circumstances of

Gatlin's separation with any Summit employee. *See Id.* at 24:14-25:8.

Gatlin testified that union steward Bob Mase told her he spoke with Detective Jaicomo, the person who was completing her background check for Lincolnway. Mase told Gatlin that Jaicomo asked why she was fired. Mase directed Jaicomo to Chief Peterson's office. Gatlin could not confirm whether Jaicomo and Peterson actually met, and Mase did not give a deposition. The testimony of Jaicomo, however, refuted Gatlin's story; he denied having any communication with anyone at Summit about Gatlin. Gatlin appears to contend that Mase's statement about his interaction with Jaicomo gives rise to a genuine factual dispute. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 15; Pl.'s Stat. of Add'l Facts ¶¶ 35-37. The problem is that Gatlin has no admissible evidence of Mase's account of his dealings with Jaicomo. Although Mase conceivably could testify about Jaicomo's inquiry, Gatlin cannot; her testimony about what Mase said is inadmissible hearsay. Thus Gatlin's account does not give rise to a genuine dispute of material fact. Gatlin cannot maintain a claim that Summit interfered with her efforts to secure employment with Lincolnway. Gatlin's claim that Summit retaliated against her for seeking a light-duty accommodation, however, fares better. Gatlin's attorney sent Summit a letter seeking an accommodation on June 17, 2013. Summit never replied to the letter. It terminated Gatlin two weeks later, on July 2, 2013. It is true, as Summit argues, that close timing generally is not enough to establish causation in a retaliation case. But in this case there is both a short interval and a departure from established procedure: Gatlin was terminated summarily, without any sort of hearing—neither an arbitration procedure under the collective bargaining agreement governing Summit police officers nor a hearing by Summit's Board of Fire

and Police Commissioners.  The combination of close timing and irregular procedures is sufficient to permit a reasonable jury to find a causal connection.

## 2.    FMLA claims

Gatlin argues that defendants violated the FMLA by interfering with her rights under the act and retaliating against her for asserting them.  Defendants' argument regarding Gatlin's FMLA interference and retaliation claims rests on Summit's offer to reinstate Gatlin to her former position after her twelve weeks of FMLA leave expired.

"The FMLA allows an eligible employee with a serious health condition that renders her unable to perform her position to take twelve workweeks of leave during each twelve-month period." *Goelzer v. Sheboygan Cty.*, 604 F.3d 987, 992 (7th Cir. 2010).  The FMLA also entitles the employee who has taken leave to return to her previous position or an equivalent one once she returns to work.  *Id.*  The FMLA prohibits employers from interfering with these rights or retaliating against employees who assert them.  *See* 29 U.S.C. § 2615(a)(2); *Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 741 (7th Cir. 2008).

### a.    Interference

To establish an FMLA interference claim, an employee must show that 1) she was eligible for the FMLA's protections; 2) her employer was covered by the FMLA; 3) she was entitled to take leave under the FMLA; 4) she provided sufficient notice of her intent to take leave; and 5) her employer denied her FMLA benefits to which she was entitled.  *Goelzer*, 604 F.3d at 993.  The first four factors are undisputed.  As for the fifth factor, it is undisputed that Gatlin took twelve weeks of FMLA leave.  Gatlin argues that defendants interfered with her right under the FMLA to be reinstated after her leave

expired.

The FMLA requires an employer to restore an employee to the position she held at the time FMLA leave began or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). This right does not extend to an employee who is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition. 29 C.F.R. § 825.214(b). But if an employer has adopted an employee benefit program that provides an employee rights greater than that afforded by the FMLA, the employer is bound by that program and must observe it. 29 C.F.R. § 825.700. Gatlin argues that Summit adopted such a program and failed to follow it. Defendants agree that the extended program exists but deny it applies in this case.

The section in Summit's employee handbook entitled "Family/Medical Leave of Absence" states: "If, due to your own medical circumstances, you are no longer able to perform your original job, we will attempt to transfer you to alternative suitable work, if available." Pl.'s Stat. of Add'l Facts ¶ 19. Because the FMLA does not include a right to be transferred to a suitable alternative position, the benefits from Summit's program exceed those under the FMLA. *See Hendricks v. Compass Grp., USA, Inc.*, 496 F.3d 803, 805 (7th Cir. 2007) ("there is no FMLA light duty"). Thus under the regulation just cited, Summit is bound under the FMLA by its own, more generous program.

Despite the dispute regarding the essential functions of a police officer, the parties both seem to agree that when Gatlin was released to return to work, she could not perform the duties of her unrestricted full duty job without an accommodation. It is

16

also undisputed that Summit did not attempt to transfer her to alternative suitable work but instead only offered her, repeatedly, the same full duty position she previously held. What is disputed is whether defendants had alternative suitable work at the time Gatlin's FMLA leave expired. If such work—light duty or otherwise—was not available, then defendants did not run afoul of Summit's leave program or, consequently, the FMLA. If, on the other hand, a light duty position was available but was not offered to Gatlin, then defendants violated the FMLA by failing to comply with the terms of Summit's leave program. Because, as previously discussed, the availability of light duty positions is disputed, defendants are not entitled to summary judgment on Gatlin's FMLA interference claim.

### b. Retaliation

A plaintiff can prove an FMLA retaliation claim under either the direct or indirect method of proof. *Lewis*, 523 F.3d at 741. Under the direct method, the plaintiff must proffer direct or circumstantial evidence of her employer's discriminatory motivation. *Id.* Under the indirect method, the plaintiff must establish that, after taking FMLA leave, she was treated less favorably than other similarly situated employees who did not take FMLA leave, even though she was performing her job in a satisfactory manner. *Burnett v. LFW, Inc.*, 472 F.3d 471, 481-82 (7th Cir. 2006).

Gatlin appears to proceed under the direct method. She points to what she characterizes as the suspicious timing of her termination after she requested reinstatement as circumstantial evidence of defendants' retaliatory motive. She also argues that the defendants' failure to follow their own internal procedures is evidence of a discriminatory motive. The Court agrees. A jury reasonably could infer from

defendants' failure to follow their own procedures by not granting Gatlin the additional leave prescribed by Summit's FMLA policy and, as the Court explains later, by terminating her without a hearing. *See Lewis*, 523 F.3d at 743 (denying summary judgment by finding that the plaintiff "produced evidence that the school board had failed to follow its own procedures in demoting her, a circumstance that, if true, could suggest a discriminatory motivation"). Defendants argue that *Lewis* is distinguishable because the Seventh Circuit relied on factors beyond the failure to follow its usual procedures. Perhaps so, but it is nonetheless the case that evidence of an employer's failure to follow its established practice is evidence that would support a finding of retaliatory motive. In this case, the evidence Gatlin cites is sufficient to preclude summary judgment.

**3.     Race discrimination**

Gatlin argues that defendants discriminated against her based on race in violation of 42 U.S.C. § 1981. She argues that defendants treated her differently from other employees because she was a white woman married to an African-American man. According to Gatlin, defendants treated other similarly situated employees who were not in interracial marriages move favorably than they treated her. Specifically, Gatlin says that she was disciplined for coming to work late and for crashing her squad car, in contrast to employees who were not in interracial marriages who, she says, were not disciplined for similar conduct. She points to instances when other white employees who were not in interracial marriages were allowed to take time off for their children, claiming that she was not afforded that same privilege.

"Section 1981 protects the right of all persons to make and enforce contacts

regardless of race." *Carter v. Chicago State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015).

To establish a claim under section 1981, a plaintiff may proceed under either the direct

or indirect method of proof.  Under the direct method, the plaintiff must show that her

membership in a protected class was a motivating factor in the adverse employment

action.  *Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 509 (7th Cir. 2012).  Under

the indirect burden-shifting method, the plaintiff must show that 1) she is a member of a

protected class; 2) she met the employer's legitimate business expectation; 3) she

suffered an adverse employment action; and 4) similarly situated employees outside of

the protected class were treated more favorably.  *Id.* at 511.  If the plaintiff meets each

of these requirements, the burden shifts to the defendant to articulate a legitimate,

nondiscriminatory reason for the employment action.  *Id.*  If the defendant does so, the

burden shifts back to the plaintiff to establish that the stated reason is pretextual.  *Id.* at

511-12.  Gatlin's claim proceeds via the indirect method.

The parties agree that Gatlin is in an interracial marriage.  Defendants do not

contest Gatlin's assertion that her interracial marriage places her in a protected class

under section 1981.  Thus the Court accepts that Gatlin can show that she was a

member of a protected class.  A reasonable jury could not, however, find that she meets

the other criteria under the indirect method of proof.  As the Court discusses below, the

incidents upon which Gatlin bases her claim are supported only by inadmissible hearsay

or speculation or are barred by the statute of limitations.  The Court addresses each

alleged discriminatory event separately.

### a. Time-barred incidents

Gatlin partly bases her section 1981 claim on two incidents that are time barred

absent a showing of a continuing violation: 1) defendants did not allow her to change her assigned shift when she requested to do so "in 2008 or 2009," and 2) defendants disciplined her on August 11, 2009 for crashing her police car on August 2. Defs.' Ex. 1 (Gatlin Dep.) at 219:12-13, 239:11-19; *See* Defs.' Ex. 14. The limitations period for section 1981 claims is four years. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Gatlin filed her complaint on May 22, 2014, so these events occurred at least five years prior to the commencement of this lawsuit. Because these incidents are outside the limitations period, Gatlin must show that there were other timely incidents of discrimination that, if considered together with these older incidents, would give rise to a viable hostile work environment claim. If she can show that the individual acts were part of one unlawful employment practice, the non-timely claims can be read as part of the whole, as long as one of the acts fell within the applicable statutory period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 2061, 2074-75 (2002). For this reason, the Court examines the other, more recent allegations to determine whether a reasonable jury could find a timely unlawful act.

**b.    Shift changes**

Gatlin contends that white employees who were not in interracial marriages were treated preferentially concerning shift assignments. Summit counters by contending that Gatlin's purported comparators were not similarly situated to her. Similarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every way. *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009). The question is not whether the situations are precisely equivalent but rather whether they are sufficiently similar to permit a reasonable

inference that the plaintiff was singled out for worse treatment.  *See Coleman v. Donahoe,* 667 F.3d 835, 846 (7th Cir. 2012).  In the usual case, a plaintiff must show that the proposed comparators 1) dealt with the same supervisor; 2) were subject to the same standards; and 3) engaged in similar conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them. *Id.*

Defendants argue that Gatlin's comparators (the Koenigs, a white couple) were not similarly situated because they held higher ranks in the police force.  Higher ranked employees often are inappropriate comparators because they have different duties or are subject to different standards.  *Rodgers v. White*, 657 F.3d 511, 518 (7th Cir. 2011). But defendants have not provided any evidence to suggest that the Koenigs were subjected to different standards with regard to the matters in question based on their higher ranks.  Rather, defendants simply assert that the Koenigs are inappropriate comparators because of their job titles.  Because "formal job titles and rank are not dispositive," *id.*, defendants' argument does not carry the day.

Although a jury reasonably could find that the Koenigs were appropriate comparators, Gatlin does not provide any admissible evidence that would permit a finding that they were treated better than she was.  Gatlin testified that Chief Peterson allowed Bruce Koenig to go watch his child in a play without using personal time, but based on Gatlin's deposition testimony, her knowledge of this incident is premised on speculation and hearsay, and thus her testimony is inadmissible.  Defs.' Ex. 1 at 226:2-230:6.  Additionally, Gatlin did not know whether Peterson granted Koenig permission to leave in advance or whether, instead, Koenig left work without telling Peterson, which is

what Gatlin is claimed to have done. *Id.* at 229:19-230:2. Gatlin also did not know whether Koenig submitted a request for time off. *Id.* at 230:3-230:6. In short, she has provided no admissible evidence to support her assertion that Koenig did not use personal time. Gatlin also testified that Koenig was allowed to visit his wife in the hospital without using personal time, but her testimony on this point is inadmissible for the same reasons. *See id.* at 227:4-228:8. Further, Gatlin did not testify that she ever requested or was denied similar leave or that defendants treated her less favorably with regard to taking time off. In sum, no reasonable jury could find in favor of Gatlin on this particular point.

      **c.**     **Early car program**

Gatlin claims that the defendants discriminatorily removed her from the early-car program, which allowed officers to begin their shifts two hours earlier than their scheduled start-time. She argues that her removal from the early-car program for tardiness was discriminatory because "white employees [were] consistently tardy or abusing sick days on a regular basis" but were not removed from the program. *Id.* at 237:1-2. Additionally, Gatlin claims that white employees were allowed to use the early-car program when they served as shift supervisors, but minority employees were not. *Id.* at 236:17-21.

Gatlin does not address whether the officers who were allegedly granted preferential treatment were in interracial marriages or not—rather, she says only that they were white. Because Gatlin identifies as white, her argument that defendants treated white employees more favorably than they did minorities undercuts her claim. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006) ("Section 1981 plaintiffs

must identify injuries flowing from a racially motivated breach of *their* contract, not of someone else's").

Even if one reasonably could infer that the existence of animus against minority employees might mean that a similar animus was levied against Gatlin due to her interracial marriage, she has failed to provide evidence sufficient to permit a reasonable jury to find in her favor on all of the remaining elements of a prima facie case. Specifically, Gatlin did not affirmatively testify that she was treated unfavorably. Rather, she stated that although she didn't believe she had been able to use the car program and be shift supervisor, she could not say for sure. And any event, Summit offered a non-discriminatory reason for disciplining Gatlin—namely, her tardiness, which she admits—and Gatlin offered no evidence to suggest that the discipline she received was pretextual.

In sum, Gatlin has not made the showing needed to survive summary judgment on this part of her claim. And because none of the timely incidents of alleged discrimination that Gatlin cites survive summary judgment, the earlier incidents upon which she relies are insufficient; a claim based on those incidents alone is time-barred. The Court grants summary judgment in favor of Summit on count three.

**4. Due process liberty interest claims**

To support her federal and state claims of denial of due process based on a deprivation of a liberty interest, Gatlin essentially relies on the same facts and arguments as she did for her disability retaliation claim. She argues that she was deprived of a constitutionally protected liberty interest in that she was stigmatized by her termination from Summit and the alleged contact between individuals at Summit and

Lincolnway that she contends caused Lincolnway to rescind her job offer. Summit argues that the record does not support Gatlin's claim.

To prevail on a due process liberty interest claim, a plaintiff must show that 1) she was stigmatized by the defendant's conduct; 2) the stigmatizing information was publicly disclosed; and 3) she suffered a tangible loss of other employment opportunities as a result of public disclosure. *Covell v. Menkis*, 595 F.3d 673, 677-78 (7th Cir. 2010). The plaintiff must demonstrate that a named defendant was the individual who made the disclosure and that the specific stigmatizing statements were made publicly, in other words outside the governmental entity on whose behalf the statements were made. *Id.*

No reasonable jury could find in Gatlin's favor on these claims. Gatlin relies on her contention that someone with Summit passed on negative information about her to someone with Lincolnway. But as discussed earlier, Gatlin has no admissible evidence to support this contention. Inadmissible hearsay does not give rise to a genuine dispute of material fact. *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994). Defendants are entitled to summary judgment Gatlin's due process liberty interest claim.

**5.      Due process property interest claims**

Gatlin argues that the Summit deprived her of her property interest in her job without a hearing in violation of the federal Constitution's Due Process Clause and the parallel provision of the Illinois Constitution. To prevail on such a claim, a plaintiff must establish that 1) there was a cognizable property right; 2) the property right was deprived; and 3) the deprivation occurred without due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). It is undisputed that Gatlin was a public employee with a

property interest in her continued employment and her termination deprived her of that interest.  It is likewise undisputed that she did not receive a hearing in relation to her termination.  Defendants argue that Gatlin waived her right to such a hearing by failing to submit an election form in accordance with the collective bargaining agreement governing the employment of Summit police officers.  Both parties have moved for summary judgment on this claim.

When an employee has a property right in her job, she cannot be terminated without due process.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Although due process does not require that an employer provide an employee with elaborate or formal proceedings, it does require at a minimum:  1) oral or written notice of the charges; 2) an explanation of the employer's evidence; and 3) an opportunity for the employee to tell her side of the story.  *Id.* at 546.  The opportunity to be heard must be at "a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Defendants argue that arbitration under a union contract can satisfy due process, and they contend that Gatlin waived her right to a hearing because she did not request arbitration under the collective bargaining agreement governing Summit police officers. The parties dispute whether Gatlin would have had to submit a request for arbitration on her own or whether Summit was required to tender the form for such a request to her. That, however, is beside the point.  As Gatlin argues, the collective bargaining agreement provides that if an officer or the union does not make a timely request for arbitration, the matter will be heard by the Board of Fire and Police Commissioners. Summit does not dispute this.  Nor does Summit dispute that no hearing regarding

Gatlin's termination was held before the Board or even offered to Gatlin. Summit says that Gatlin had an opportunity to argue for light duty, but that, too, is beside the point; the termination came after that, and the termination is what deprived her of her property interest in continued employment.

Defendants say that even if Gatlin had been given a hearing, her termination would have been upheld, and as a result she can recover, at most, only nominal damages. That contention, however, involves issues of fact that a jury will have to decide. Gatlin is entitled to summary judgment as to liability on her due process property interest claims under the federal and Illinois constitutions asserted in counts five and six.

**6.     Equal protection claims**

Gatlin asserts a constitutional equal protection claim under 42 U.S.C. §1983 based on her allegations that defendants discriminated against her due to her disability and interracial marriage. Because the parties rely on the same evidence and reassert the same arguments as they did in addressing Gatlin's statutory disability and race discrimination claims, the Court resolves the summary judgment motion in the same way as it did on those claims. In short, both sides' motions are denied as to the equal protection disability claim, but defendants are entitled to summary judgment on the equal protection race discrimination claim.

**Conclusion**

For the foregoing reasons, the Court grants both sides' motions for summary judgment in part and denies them in part [dkt. nos. 45, 49]. Summary judgment as to liability is entered in favor of plaintiff on her due process property interest claims under

federal and state law (Counts 5 and 6). Summary judgment is entered in favor of defendants on plaintiff's due process liberty interest claims (Counts 7 and 8) and her race discrimination claims (Counts 3, 11, and 12). The parties' motions are otherwise denied, and thus the case will proceed to trial on plaintiff's claims of disability discrimination (Counts 1, 2, 9, and 10), her claim under the FMLA (Count 4), and the issue of damages on her due process property interest claims (Counts 5 and 6). The Court sets the case for a status hearing on December 22, 2015 at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 15, 2015